# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDY ORTIZ,                         :
    *Plaintiff*,                  :
                                  :    CIVIL ACTION
    v.                         :    NO. 21-3100
                                    :
CITY OF PHILADELPHIA, *et al.*,     :
    *Defendants*.                 :

**PAPPERT, J.**                                  **May 6, 2022**

## MEMORANDUM

*Pro se* Plaintiff Andy Ortiz, a convicted prisoner incarcerated at the Curran-Fromhold Correctional Facility ("CFCF") alleges violations of his constitutional rights and raises claims pursuant to 42 U.S.C. § 1983.  (ECF No. 16.)[1] The Court allows Ortiz to proceed on his failure to protect claim against Defendant Lawton, dismisses his grievance-based claims with prejudice and dismisses the remainder of his claims without prejudice.  Ortiz may go forward with just his failure to protect claim against Defendant Lawson or may file a Second Amended Complaint to correct the deficiencies in his Amended Complaint.

I[2]

Ortiz's original Complaint named the following Defendants: (1) Corrections

---

[1]    In his Amended Complaint, Ortiz checked boxes indicating that he was a pretrial detainee, a civilly committed detainee and a convicted and sentenced state prisoner.  (ECF No. 16 at 4.)  Review of the publicly available docket reflects that on March 5, 2021, Ortiz pled guilty to rape of a child and numerous related offenses. *Commonwealth v. Ortiz*, No. CP-51-CR-1258-2020 (C.P. Phila.)  On October 7, 2021, while awaiting sentencing, Ortiz filed a motion to withdraw his guilty plea.  That motion remains pending.  (*Id.*)  Thus, at the time of the events giving rise to his claims, Ortiz was a pretrial detainee.

[2]    The allegations are taken from the Complaint (ECF No. 2) and the Amended Complaint (ECF No. 16).  The Court adopts the pagination assigned by the CM/ECF docketing system.

Officer H. Lawton, (2) Sargent David Gill, (3) Major Martin, (4) Blanche Carney,

(5) Philadelphia Department of Prisons and (6) the City of Philadelphia.[3]  Defendants

Lawton, Gill and Martin were sued in their individual capacities; Defendant Carney

was sued in her official capacity.

Upon screening the initial Complaint, the Court granted Ortiz leave to proceed

*in forma pauperis* and permitted him to proceed on his failure to protect claim against

Lawson.  Ortiz's claim against the Department of Prisons, his claim against Gill based

on interference with the grievance process and his request that charges be brought

against Correa were dismissed with prejudice.  Ortiz's official capacity claims and his

individual capacity claims against Gill and Martin were dismissed without prejudice.

Ortiz was given the option of proceeding with his claim against Lawson or filing an

Amended Complaint.  (ECF No. 14 at 11-12.)  Ortiz chose to file an Amended

Complaint, which is ripe for screening.

Ortiz alleges that on March 4, 2020, while he was incarcerated at PICC, he was

assaulted by inmate Gabriel Correa, after which he was photographed and taken to the

hospital for treatment of his injuries.  (ECF No. 16 at 4.)  Lawton is alleged to have

seen the incident and Ortiz bleeding but walked away without intervening.  (*Id.*)  Gill,

---

[3]       Ortiz also included a page in his Complaint that stated, "These are officers in the incident."
(ECF No. 2 at 5.)  The page included three columns of names.  The first included Lt. Horsey, Sgt.
White, Major Martain (the Court understood this to be a misspelling and believed Ortiz was
referring to Defendant Martin) and COs Petel, Amazon, Barnett, Bailey and Tita.  A reference below
the names stated, "Punch on me."  (*Id.*)  The second column included Sgt. Crawford, Sgt. David Gill,
Major Martain, CO H. Lawton and Gabriel Correa PP# 1212835.  A reference below the names
stated, "Stabbings."  (*Id.*)  The third column identified COs S. Blacksheer and A. Jones, Donte
Parker, Eric McDail and Sgt. V. White.  A reference below these names stated, "Targeted."  (*Id.*)  It
was unclear to the Court whether Ortiz intended to assert claims against these individuals, who
were not otherwise named as Defendants.  He was granted leave to include claims against these
people in his Amended Complaint, but has only sued Defendants Lawton, Gill, Martin and Carney.

presumably after the incident, allegedly refused to permit Ortiz to speak to Internal Affairs or to his lawyer.  (*Id.*)  Ortiz alleges he submitted a grievance, but Martin and Carney ignored it.  (*Id.*)  Ortiz also alleges he was refused permission to contact his loved ones and was refused access to the prison law library.  (*Id.*)  Ortiz claims Carney was "wrong for hiring" and failed to adequately train and supervise.  (*Id.*)

Ortiz asserts claims for cruel and unusual punishment, failure to protect, denial of permission to communicate with his family and denial of access to his attorney and the law library against the Defendants in their individual capacities.  (*Id.* at 3.)  He seeks compensatory damages.  (*Id.* at 5.)

## II

The Court previously granted Ortiz leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss his Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).

Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Ortiz is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## A

In his Amended Complaint, Ortiz alleges Carney was "wrong on hiring" and also alleges a "failure to adequate [sic] train, supervise" on her part. (ECF No. 16 at 4.) The Court understand this to be a supervisory liability claim against Carney.

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate

4

indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))

"Under Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in

5

constitutional violations, that the failure to train . . . can fairly be said to represent

official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to

train "actually causes injury," a supervisor may be held liable.  In addition,

> In resolving the issue of [supervisory] liability, the focus must be on
> adequacy of the training program in relation to the tasks the particular
> officers must perform.  That a particular officer may be unsatisfactorily
> trained will not alone suffice to fasten liability on the [supervisor], for the
> officer's shortcomings may have resulted from factors other than a faulty
> training program. . . .  Neither will it suffice to prove that an injury or
> accident could have been avoided if an officer had had better or more
> training. . . .  Moreover, for liability to attach . . . the identified deficiency
> in [the] training program must be closely related to the ultimate injury.

*Id*. at 390-91.

Ortiz's Amended Complaint does not reference any policy of which Carney was

aware that created a risk of harm or resulted in the injuries Ortiz suffered.  Ortiz

asserts without explanation that Carney failed to train and supervise but does not

describe the nature of this failure.  Such a claim is not plausible and the Court

dismisses it accordingly, albeit with leave to amend.

### B

The gravamen of Ortiz's Amended Complaint is that he was stabbed by inmate

Gabriel Correa during the night, requiring medical attention.  He alleges Lawton

observed the incident and observed Ortiz bleeding, but walked away.  He also alleges

Gill did not permit Ortiz to speak with Internal Affairs or his lawyer.  Based on this

conduct, Ortiz asserts a claim based on prison officials' failure to protect him from

inmate Gabriel Correa.

The Due Process Clause of the Fourteenth Amendment governs claims brought

by pretrial detainees.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  To

establish a basis for a Fourteenth Amendment violation, a prisoner must allege his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In general, to allege a sufficiently culpable state of mind a detainee must assert prison officials acted with deliberate indifference, meaning they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

In the context of suits against prison officials for failure to protect an inmate from harm caused by other inmates, the Third Circuit has stated that where a prison official is deliberately indifferent to a pervasive risk of harm to an inmate, an inmate

may obtain relief in a § 1983 action. *Young v. Quinlan*, 960 F.2d 351, 361 (1992) (superseded by statute on other grounds as stated in *Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000). In *Young*, the Third Circuit reversed a grant of summary judgment where prison officials were warned by an inmate that the inmate was concerned about his safety and it was undisputed that the prison officials either did nothing or their response, if any, came too late to be of any help to the inmate. *Id.* at 363.

Elaborating on the deliberate indifference standard, the Third Circuit stated that "a prison official is deliberately indifferent when he knows or should have known of a sufficiently serious danger to an inmate." *Id.* at 361. The Court stated that the phrase "should have known" "[d]oes not refer to a failure to note a risk that would be perceived with the use of ordinary prudence. It connotes something more than a negligent failure to appreciate the risk . . . , though something less than subjective appreciation of that risk." *Id.*, citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017 (3rd Cir. 1991).

Furthermore, the "strong likelihood of [harm] must be 'so obvious that a lay person would easily recognize the necessity for' preventive action." *Young*, 960 F.2d at 361, (citing *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987)). There must not only be a great risk of injury, but it must also be so apparent "that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges." *Colburn*, 946 F.2d at 1025.

Ortiz claims Lawton observed the stabbing and saw Ortiz bleeding but walked away without removing Ortiz from the situation. (ECF No. 16 at 4.) This adequately states a plausible claim for failure to protect against Lawton.

C

Read liberally, Ortiz's allegation that Gill did not allow him to contact Internal Affairs following the stabbing could be construed as a claim that Gill interfered with Ortiz's ability to participate in the prison grievance process.  However, "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*); *Matthews v. Graves*, No. 14-445-GMS, 2014 WL 4743958, at *4 (D. Del. Sept. 19, 2014) ("In addition, because a prisoner has no free-standing constitutional right to an effective grievance process, Matthews cannot maintain a constitutional claim against Kendall and Internal Affairs based upon his perception that they failed to properly investigate his grievances.")  Accordingly, the facts alleged by Ortiz against Gill do not give rise to a plausible basis for a constitutional claim.

Ortiz also alleges he submitted a grievance following the incident, but Martin and Carney ignored it.  (*Id.* at 4.)  However, Ortiz does not state a plausible constitutional claim against these Defendants based on their alleged failure to review and respond to his grievance, because there is no constitutional right to a grievance process.  *Pressley v. Beard*, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.")  Additionally, participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation.  *See Rode,* 845 F.2d at 1207 (participation in grievance process not enough to show personal

involvement in alleged violation); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").  Consequently, any claim asserted by Ortiz against Martin or Carney based on their responses or lack thereof to his grievances are dismissed with prejudice.

D

Ortiz alleges in conclusory fashion that he was denied access to the prison law library.  (*Id.* at 4.)  Read liberally, Ortiz could be raising a First Amendment access to the courts claim.  However, that claim is not plausible.  "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)).  This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  In other words, a prisoner claiming he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in

library to harm in underlying action).  In general, an actual injury occurs when a prisoner demonstrates a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts.  *Christopher*, 536 U.S. at 415.  "[T]he underlying cause of action, . . . is an element that must be described in the complaint."  *Id*.  *See also Presbury v. Wetzel*, -- F. App'x. --, No. 19-2586, 2020 WL 110234, at \*1-2 (3d Cir. Jan. 9, 2020) (access to court claim denied where prisoner did not allege facts about merits of underlying claim or that he suffered an injury because of the alleged deprivation).

Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney.  *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*).  Here, Ortiz alleges Gill did not allow him to contact his attorney, the clear inference being that at the time of the incident he was represented by counsel.  (ECF No. 16 at 4.)

Ortiz's allegations are conclusory.  He does not allege facts which could establish that he was deprived of a nonfrivolous and arguable claim due to the alleged denial of access to the law library.  And again, he was represented by counsel at the time of the alleged incident.

### E

Ortiz alleges he was not permitted to contact his loved ones following the stabbing incident.  (*Id.* at 4.)  "Inmates have a right protected under the First Amendment to communicate with their family and friends by reasonable means."  *Stokes v. Lanigan*, No. 12-1478, 2012 WL 4662487, at \*5 (D. N.J. Oct. 2, 2012); *Almahdi v. Ashcroft*, 310 F. App'x 519, 521-22 (3d Cir. 2009) (noting the "constitutional right at

issue has been described as the right to communicate with people outside prison walls.")  This right, however, has limitations.  There is no constitutional right to visitation, *Flanagan v. Shively*, 783 F. Supp. 922, 934 (M.D. Pa. 1992), and no right to unlimited telephone use, *Almahdi*, 310 F. App'x at 522.  Moreover, where alternate means of communication are available, the limitation on a particular means of communicating may not be deemed unreasonable.  *See Ortiz-Medina v. Bradley*, No. 1:19-cv-2133, 2020 WL 362697, at *5 (M.D. Pa. Jan. 22, 2020) (quoting *Love v. New Jersey Dep't of Corr.*, No. 14-5629, 2015 WL 2226015, at *3 (D.N.J. May 12, 2015)).

Again Ortiz's claim is perfunctory.  He does not allege facts detailing his request to communicate with his loved ones and does not identify who denied the request.  His Amended Complaint lacks allegations as to how the named Defendants caused him to be unable to communicate with family and friends.  Ortiz has not stated a plausible First Amendment claim and this claim is dismissed, but he can amend it.

F

Ortiz alleges Gill would not allow him to contact his lawyer following the incident.  (*Id.* at 4.)  The Court understands Ortiz to be asserting a Sixth Amendment right to counsel claim, which is also not plausible.

"Under the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him." *Prater v. City of Phila.*, No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (on remand) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)).  With respect to restrictions on attorney contact with clients, "[t]he Supreme Court [has] held that 'inmates must have a reasonable opportunity to seek and receive the assistance of

attorneys' and that [prison] '[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid.'" *Id.* at 184 (fourth alteration in original) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419 (1974)).  Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, "'the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'" *Id.* at 187 (quoting *Bell*, 441 U.S. at 547).  A prison regulation restricting a pretrial detainee's contact with his attorney is unconstitutional where it "'unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense.'" *Id.* (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)).

Notably, unlike a First Amendment access to the courts claim, a claim of unreasonable interference with Sixth Amendment right to counsel does not require a showing of actual injury.  *See Benjamin*, 264 F.3d at 185 (pretrial detainee has standing to assert unreasonable interference with Sixth Amendment right even if the interference did not result in "actual injury").  Although the Third Circuit has not ruled on this issue in a published opinion, the court in *Prater* noted that district court had failed to address the prisoner's Sixth Amendment interference with right to counsel claim and disagreed with the district court's implicit conclusion that the claim required a showing of actual injury.  *Id.*, 542 F. App'x at 139, n.5 (affirming in part on alternate basis) (citing *Benjamin*, 264 F.3d at 185).

Ortiz does not allege he asked to communicate with his attorney in connection with the defense of criminal charges against him.  He does not state why his request was denied – that is, whether it was because of a particular regulation or the decision of

13

an individual officer.  On these facts, Ortiz has not stated a plausible Sixth Amendment claim and his claim is dismissed.  The Court is not sure Ortiz cannot plead a plausible Sixth Amendment claim, so he will be allowed to amend.

IV

For the foregoing reasons, Ortiz's failure to protect claim against Lawton may proceed and will be served for a responsive pleading.  The Court dismisses with prejudice Ortiz's claim against Gill based on interference with the grievance process, and his claims against Martin and Carney based on their non-response to Ortiz's grievance.  The Court dismisses without prejudice Ortiz's supervisory liability claim against Carney, his First Amendment access to courts and outside communication claims and his Sixth Amendment claim based on denial of access to his attorney.  Ortiz may proceed with the claim that survived statutory screening or he may file a Second Amended Complaint to address the deficiencies described in the claims dismissed without prejudice.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.