IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDY ORTIZ, : | |
|     *Plaintiff*, : | |
| : | |
| v. : | CIVIL ACTION NO. 21-CV-3100 |
| : | |
| CITY OF PHILADELPHIA, *et al.*, : | |
|     *Defendants*. : | |

## MEMORANDUM

**PAPPERT, J.**                                                **SEPTEMBER 6, 2022**

      Andy Ortiz, a convicted prisoner incarcerated at SCI Camp Hill filed, pro se, a Second Amended Complaint[1]. This latest pleading raises claims pursuant to 42 U.S.C. § 1983 and alleges violations of Ortiz's constitutional rights. (ECF No. 23.) For the following reasons, the Court will permit Ortiz to proceed on his failure to protect claim against Defendant Lawton and his due process claim against Defendant Gill. His claims against Defendants Carney and Martin, his Sixth Amendment claim, and his claims based on access to the courts and denial of outside communication will be dismissed with prejudice for failure to state a claim under § 1915(e)(2)(B)(ii). Ortiz will not be granted further leave to amend. The claims that survived statutory screening will be served for a responsive pleading at this time.

---

[1] Ortiz checked boxes indicating that he was a pretrial detainee, a civilly committed detainee, and a convicted and sentenced state prisoner. (ECF No. 23 at 6.) The publicly available docket reflects that on March 5, 2021, Ortiz pled guilty to rape of a child and numerous related offenses. *Commonwealth v. Ortiz*, No. CP-51-CR-1258-2020 (C.P. Phila.) On June 3, 2022, the state court denied Ortiz's motion to withdraw his guilty plea and Ortiz was sentenced to a period of incarceration. (*Id.*) At the time of the events giving rise to his claims, Ortiz was a pretrial detainee.

1

I[2]

Ortiz's original Complaint named the following Defendants: (1) C/O H. Lawton, (2) Sgt. David Gill, (3) Major Martin, (4) Blanche Carney, (5) the Philadelphia Department of Prisons, and (6) the City of Philadelphia. Lawton, Gill and Martin were sued in their individual capacities; Carney in her official capacity. Upon initial screening, the Court granted Ortiz leave to proceed *in forma pauperis* and permitted him to proceed on his failure to protect claim against Lawton. Ortiz's claims against the Department of Prisons, his claim against Gill based on interference with the grievance process and his request that charges be brought against another inmate were dismissed with prejudice. Ortiz's official capacity claims and his individual capacity claims against Gill and Martin were dismissed without prejudice. Ortiz was given the option of proceeding with his claim against Lawton or filing an amended complaint. He chose to file an amended complaint. *Ortiz v. City*, No. 21-3100, 2022 WL 1443425, at *1 (E.D. Pa. May 6, 2022).

The Amended Complaint asserted claims against the individual Defendants. Upon screening the Amended Complaint, the Court allowed Ortiz's failure to protect claim against Lawton to proceed and dismissed with prejudice Ortiz's claim against Gill based on interference with the grievance process and his claims against Martin and Carney for their alleged non-response to Ortiz's grievance. The Court dismissed without prejudice Ortiz's supervisory liability claim against Carney, his First Amendment access to courts and outside communication claims, and his Sixth

---

[2] The allegations are taken from the SAC (ECF No. 23). The Court adopts the pagination assigned by the CM/ECF docketing system.

2

Amendment claim based on denial of access to his attorney. Ortiz was given the option of proceeding on the claim that survived statutory screening or filing a second amended complaint. (*Id.* at \*7.) Ortiz chose to file the Second Amended Complaint, which is ripe for screening.

Ortiz asserts individual capacity claims against Lawton, Martin, Gill and Carney. (SAC at 2, 3.) He alleges that on March 4, 2020, he was stabbed by an inmate. (*Id.* at 4.) He claims Lawton was aware of the incident, saw Ortiz bleeding, but walked away instead of removing Ortiz from the area. (*Id.*) Lawton is alleged to have returned later with Gill and then taken Ortiz for medical care. Ortiz was later sent to the hospital for stitches. (*Id.*)

Ortiz alleges that when he returned from the hospital, Gill removed him from the RHU in which Ortiz had been housed and moved him to a different RHU with single cells. (*Id.*) Gill is alleged to have asked Ortiz to prepare a statement about the incident. Ortiz claims he did so and that a hearing was later held at which he was found not guilty. (*Id.*) Nonetheless, he alleges that he remained in the RHU, and when he requested that he be allowed to speak to his family, Gill refused the request and told Ortiz he was on punitive status. (*Id.*)

Ortiz alleges that he sent Martin a grievance and received no response. (*Id.* at 5.) Ortiz claims he asked Martin why he could not call his lawyer or go out for recreational time and was told that he was being investigated. (*Id.*)

Ortiz alleges a "failure to train" by Carney. (*Id.*) In the same paragraph he also alleges that his "due process rights was violate to had lead me to the R.H.U with the

3

incident see (Andy Ortiz v. Lt. Horsey, 21-cv-3104) corporal punishment, deliberate indifference. I was in the custody of the PDP." (*Id.*)

Ortiz claims that he has a head wound, and that he suffers from PTSD. (*Id.* at 7.) He asserts claims for failure to protect, deliberate indifference, and due process violations. (*Id.* at 4.) He requests an award of compensatory and punitive damages. (*Id.* at 7.)

II

The Court previously granted Ortiz leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Second Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the amended pleading contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Ortiz is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*,

8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A

The Court previously dismissed with prejudice Ortiz's claims based on interference with the grievance process and failure to respond to grievances he submitted. *Ortiz*, 2022 WL 1443425, at *5. In his Second Amended Complaint, Ortiz again alleges that Gill did not allow him to contact Internal Affairs following the stabbing, and as with the Amended Complaint, the Court construes this as a claim that Gill interfered with Ortiz's ability to participate in the prison grievance process. Ortiz also again alleges that he sent a grievance to Martin, which Martin did not answer. As the Court previously explained, "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *Pressley v. Beard*, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or

investigations were referred to them.") Additionally, participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation. *See Rode,* 845 F.2d at 1207 (participation in grievance process not enough to show personal involvement in alleged violation). Accordingly, the facts alleged by Ortiz against Gill and Martin do not give rise to plausible constitutional claims and will again be dismissed with prejudice.

B

The Court dismissed the denial of access to courts, denial of outside communication and Sixth Amendment claims in Ortiz's Amended Complaint on the ground that they were conclusory and therefore not plausible. *Ortiz*, 2022 WL 1443425, at *5-7. The Court granted Ortiz leave to amend these claims and provided guidance with respect to the deficiencies in the claims asserted in the Amended Complaint. *Id.* In his Second Amended Complaint, Ortiz again alleges in conclusory fashion only that he was not allowed to telephone his family or his lawyer. (SAC at 4, 5.) These allegations do not cure the deficiencies previously identified by the Court and these claims will be dismissed again. As Ortiz has already been given an opportunity to cure the defects in his claims and has been unable to do so, the Court concludes that further amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story").

C

The Court previously dismissed Ortiz's supervisory liability claim against Carney as not plausible, but granted him leave to amend the claim. Ortiz now alleges a

"failure to train" by Carney, and that his due process rights were violated by being kept in the R.H.U. (SAC at 5.)

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))

"Under Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666

7

(E.D. Pa. 2008). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable. In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id*. at 390-91.

As before, Ortiz does not reference any policy of which Carney was aware that created a risk of harm, or resulted in the injuries Ortiz suffered. Ortiz asserts without explanation that Carney failed to train, but does not describe the nature of this failure. He alleges that his due process rights were violated while he was in the custody of the PDP, and the Court interprets this as a due process claim against Carney because she is the Commissioner of the Philadelphia Department of Prisons. However, as explained above, Ortiz cannot state a plausible claim against Carney based solely on her position as the head of the Department. Ortiz has again failed to state a plausible claim against

8

Carney based on supervisory liability. This claim will be dismissed with prejudice because Ortiz has already been afforded an opportunity to amend and further amendment would be futile.

D

The gravamen of Ortiz's Complaint is that he was stabbed by inmate Gabriel Correa, requiring medical attention. He alleges that Lawton observed the incident and saw Ortiz bleeding, but walked away without removing Ortiz from the situation. (SAC at 4.) The Court previously determined that these allegations adequately stated a plausible claim for failure to protect against Lawton and this has not changed. *See Ortiz*, 2022 WL 1443425, at *4. This claim will be served for a responsive pleading.

E

Ortiz alleges that Gill placed him in the RHU, required him to prepare a statement about the stabbing incident, and that, following a hearing at which Ortiz was found not guilty of any infractions arising from the stabbing incident, did not release Ortiz from the RHU. (SAC at 4.) The Court understands Ortiz to be asserting a due process claim against Gill based on his placement and refusal to release Ortiz from the RHU following a not guilty finding.

The United States Court of Appeals for the Third Circuit has noted that "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison

9

population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian v. Levi*, 696 F.3d 352, 375 (3d Cir. 2012)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

"Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

"[D]etention officials' restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) "there is a showing of express intent to punish on the part of [those] [ ] officials"; (2) "the restriction or condition is not rationally related to a legitimate non-punitive government purpose," i.e., "if it is arbitrary or purposeless"; or (3) "the restriction is excessive in light of that

10

purpose." *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson*, 495 F.3d at 67-68) (alterations in original). "[M]aintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify placement of a detainee in administrative segregation, and "courts must give prison officials considerable discretion to manage internal security in their institutions." *Id.* In other words, if officials can articulate a legitimate managerial concern for placement of the detainee in restricted housing, a substantive due process claim is foreclosed. *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry").

Liberally construing Ortiz's allegations, Ortiz seems to assert that he was moved for disciplinary reasons, provided with an opportunity to present his version of the facts, and provided with a hearing at which he was found not guilty. He alleges that he was, nonetheless, not released from the RHU. Ortiz has stated a plausible due process claim against Gill based on these allegations and this claim will be served for a responsive pleading.

IV

For the foregoing reasons, Ortiz's failure to protect claim against Lawton and his due process claim against Gill will be served for a responsive pleading. The Court will dismiss with prejudice Ortiz's claim against Gill based on interference with the grievance process, his claims against Martin based on non-response to Ortiz's grievance, his supervisory liability claim against Carney, his First Amendment access

to courts and outside communication claims, and his Sixth Amendment claim based on denial of access to his attorney. An Order follows, which shall be docketed separately.

                               **BY THE COURT:**

                               ***/s/ Gerald J. Pappert***
                               **GERALD J. PAPPERT, J.**